COMMONWEALTH vs. TROY BUCK.

No. 03-P-499.

Bristol. November 17, 2004. - October 14, 2005.

Present: BECK, GELINAS, & KAFKER, JJ.

*Evidence,* Videotape. *Practice, Criminal,* New trial, Assistance of counsel,
Conduct of prosecutor, Psychiatric examination, Admissions and
confessions.

A Superior Court judge properly granted the criminal defendant's motion for a
new trial on the ground of newly discovered evidence (a surveillance
videotape that covered the entire day in question, rather than the portion of
the videotape that was played for the jury at trial), where the existence of
the videotape for the entire day would have bolstered the defendant's alibi
defense significantly; where under the circumstances of the case, defense
counsel could not be charged with knowledge of the unedited videotape in
the possession of the police; and where the unedited videotape would
probably have been a real factor in the jury's deliberations. [762-765]
This court did not reach a criminal defendant's argument that his trial counsel
was ineffective, and there was no merit to the defendant's claim of pros-
ecutorial misconduct [765]; moreover, this court concluded that the judge
hearing a motion for a new trial correctly declined to consider a statement
that the defendant made during a court-ordered psychiatric examination,
where the use of that statement as a confession was not permitted under
G. L. c. 233, § 20B(*b*) [766].

INDICTMENTS found and returned in the Superior Court Depart-
ment on March 29, 2001.

The cases were tried before *Richard J. Chin,* J., and a motion
for a new trial, filed on September 25, 2003, was heard by him.

*John D. Moses,* Assistant District Attorney, for the
Commonwealth.

*Dennis Shedd* for the defendant.

BECK, J. After a three day trial, the defendant was convicted
of three counts of armed assault in a dwelling with intent to
commit a felony, and three counts of kidnapping. The defense
was alibi. The defendant was sentenced to terms of twelve to

fifteen years on the armed assaults and five to ten years on the kidnapping charges, all to run concurrently. Following sentencing, new counsel filed a motion for a new trial alleging newly discovered evidence, prosecutorial misconduct, and ineffective assistance of counsel. The trial judge allowed the motion on the ground of newly discovered evidence. This is the Commonwealth's appeal.

*Factual background: the crimes.* We summarize the facts as set out in the trial judge's findings, rulings, and order, as supplemented by undisputed testimony from the record, as necessary. Sometime between 10:30 A.M. and 11:00 A.M. on March 2, 2001, a tall white man with hazel eyes forced his way into a house in New Bedford where three women had just finished watching a movie. He pressed a knife against the cheek of the woman who answered the door, tied her hands together, compelled the other women to tie their hands together, and rushed all three women upstairs. Shortly thereafter, the interloper abandoned whatever mission he was on, left the house, and ran down the street.

The victims promptly called the police, who arrived at approximately 11:00 A.M. The women provided descriptions of their assailant that were generally consistent with the defendant's appearance. They also selected the defendant's photograph from an array, although one hesitated as to whether the eyes of the man in the photograph matched those of the defendant.

*Investigation and the videotape.* In the course of the police investigation that followed, Matthew Giroux, the day manager at a bar called the Blue Moon Café, located within a mile of the house where the assaults took place, gave a surveillance video tape to the police. The videotape showed the defendant and another man at the bar on the date in question. The time code on the tape indicated that the defendant was at the bar from 10:47 A.M. to 10:59 A.M., the time the crimes were committed. However, Giroux told the police and testified at trial that the time code was one hour behind. Thus, if the time code read 10:00 A.M., the real time would have been 11:00 A.M. and the defendant could have appeared at both the woman's house and the bar during the time in question. The videotape was introduced in evidence, and the part of the tape covering the

period when the defendant was in the Blue Moon Café was played for the jury.

On appeal, the defendant was represented by new counsel. In reviewing the trial evidence, appellate counsel discovered that the videotape introduced in evidence at trial actually covered the entire day of March 2, 2001. Counsel then spoke to Matthew Giroux, who "recanted" his testimony concerning the time code being one hour behind. He explained that he had since learned from his sister, Patricia Giroux, the owner of the bar, that the times at which employees appeared for work on the videotape and the appearance of patrons at the bar were uniformly consistent with its usual schedule.

*Motion for new trial.* In the defendant's motion for a new trial, his counsel asserted that the videotape, despite being admitted in evidence at trial, was newly discovered evidence because trial counsel was not aware that the tape covered the entire day in question, rather than just the time that the defendant was in the bar. Although the videotape was played for the jury, it appears that it was cued to begin at the time the defendant was in the bar, and only that portion was shown to the jury. While defense counsel had been provided with a copy of the videotape prior to trial, that copy included only the period when the defendant was in the bar.

*Discussion.* "It is hornbook law that a motion for a new trial is directed to the sound discretion of the trial judge, informed by the statutory standard [as set out below]." *Commonwealth* v. *Markham,* 10 Mass. App. Ct. 651, 651 (1980). See Mass.R. Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001). "The decision of the motion judge is entitled to special deference if that judge also was the trial judge [as is the case here]." *Commonwealth* v. *Figueroa,* 422 Mass. 72, 77 (1996). "A defendant seeking a new trial on the ground of newly discovered evidence must establish both that the evidence is newly discovered and that it casts real doubt on the justice of the conviction." *Commonwealth* v. *Grace,* 397 Mass. 303, 305 (1986). *Commonwealth* v. *Pike,* 431 Mass. 212, 218 (2000). See *Commonwealth* v. *Ortiz,* 393 Mass. 523, 537-538 (1984). "The allegedly new evidence must be material and credible, see *Commonwealth* v. *Brown,* 378 Mass. 165, 171-172 (1979), and 'carry a measure of strength in

support of the defendant's position.' " *Commonwealth* v. *Pike*, *supra*, quoting from *Commonwealth* v. *Grace*, *supra*. A defendant must also show that the evidence was "unknown to the defendant or his counsel and not reasonably discoverable" through "reasonable pretrial diligence." *Commonwealth* v. *Grace*, *supra* at 306. *Commonwealth* v. *Delong*, 60 Mass. App. Ct. 122, 136-137 (2003).

Here, the existence of the videotape for the entire day was significant because at trial defense counsel had attempted to establish that the time code on the tape was correct, contrary to Matthew Giroux's testimony that it was one hour behind. As the trial judge found, "[d]uring closing arguments, both [defense counsel] and [the prosecutor] relied heavily on the accuracy, or lack thereof, of the time reflected on the Café videotape."

At the hearing on the motion, the maintenance worker for the bar, who had worked there for fourteen years, testified that the videotape time code could well be either fast or slow on any given day. Patricia Giroux also testified that the oversight of the tape, and the associated clock, was haphazard. She further stated that it was not possible that the time code was one hour behind on the day in question because the videotape showed a customer on the premises at 2:00 A.M., and no customer would be in the bar as late as 3:00 A.M. She acknowledged, however, that prior to trial she had told her brother the time code was one hour behind.

At the motion hearing, appellate counsel argued that if trial counsel could have established that the time code was correct, this evidence would have bolstered the defendant's alibi defense significantly, since the assaults took place sometime between 10:30 A.M. and 11:00 A.M., and the time code showed the defendant in the bar between 10:47 A.M. and 10:59 A.M. Appellate counsel argued further that if trial counsel had known of the existence of the entire day's videotape, trial counsel would have been able to demonstrate that the time code was correct by showing when certain employees arrived for work, when the bar opened for business, when the last patrons left at the end of the day, and when the last employee left.

The Commonwealth argues on appeal, as it did in the motion hearing, that this evidence was not newly discovered. It asserts

that defense counsel must have known the videotape covered the entire day since a police report referred to an officer having received "the video tape for that day." The judge rejected this argument. In light of the fact that defense counsel had already been provided a videotape that covered only a portion of the day in question, the mere mention in a police report of a videotape that pertains to "that day" was not likely to have alerted defense counsel to the existence of the entire day's tape. Moreover, as the judge found, "the Commonwealth made no response to the [defendant's] specific request for 'a copy of any and all video tapes, from the Blue Moon Café, confiscated or viewed by the New Bedford [p]olice, relative to [this] case.' "

The Commonwealth further argues that defense counsel's closing argument made clear he was aware of the existence of the entire day's videotape. In his closing, defense counsel stated, "[The investigating officer] gets a hold of this tape . . . . Mr. Giroux[] says the tape is an hour off. Does the officer check that by running the tape back a couple of hours to see what time this place opened or running it forward to see what time the place closes? No." This rhetoric was part of defense counsel's closing that focused on "lazy police work," discrepancies in the victims' identification, and eagerness to incriminate the defendant.

The judge found, however, that "[w]ithout full knowledge of the length of the Café videotape, the [defendant] could not have known, or have reasonably discovered, the accuracy of the time reflected on the tape." The motion judge's implicit rejection of the Commonwealth's argument that trial counsel knew the entire tape was available was warranted. On these facts, the trial judge did not abuse his discretion in concluding that trial counsel should not be charged with knowledge of the unedited videotape in the possession of the police department. Defense counsel was not obliged to search for something he did not know existed. As the record evidence supports the judge's finding, we do not disturb it. The judge did not err in considering the full videotape as newly discovered evidence.

We therefore consider whether the videotape, as newly discovered evidence, "would probably have been a real factor in the jury's deliberations." *Commonwealth* v. *Grace*, 397 Mass.

303, 306 (1986). The Commonwealth makes much of the fact that the maintenance worker testified at the motion hearing that he regularly opens the bar between 8:00 A.M. and 8:30 A.M., and on the videotape, the time code shows him unlocking the doors to the bar at 8:38 A.M. From this, the Commonwealth argues that, even if not off by a full hour, the tape must still have been off by at least eight minutes, and could have been off by up to thirty-eight minutes — the difference between the time printed on the tape (8:38 A.M.) and the earliest time that the maintenance man testified he regularly opens the bar (8:00 A.M.). The Commonwealth then argues that since the video tape shows the defendant entering the bar at 10:47 A.M., he could have arrived as early as 10:09 A.M. or as late as 10:39 A.M., and left as early as 10:20 A.M. or as late as 10:50 A.M. The Commonwealth concludes by pointing out that no one could testify to the exact time of the assault, and therefore none of the temporal possibilities is inconsistent with the Commonwealth's case.

The point is, however, that defense counsel never had the opportunity to argue the various possibilities to the jury, nor did the jury have an opportunity to evaluate such an argument. As we have stated, there was testimony the assault occurred at 10:45 A.M. The video tape shows the defendant in the bar between 10:47 A.M. and 10:59 A.M. This evidence could well have bolstered the defendant's alibi defense significantly. The judge did not err in allowing the defendant's motion for a new trial.

*Other issues.* In his motion for a new trial, the defendant also claimed that if the unexcerpted tape was not newly discovered evidence, then trial counsel rendered ineffective assistance in failing to discover the full videotape before trial. Because we agree with the judge that the evidence of the videotape was newly discovered, we need not address the defendant's argument that trial counsel was ineffective. As for the defendant's claim of prosecutorial misconduct for the prosecutor's failure to disclose exculpatory evidence, the judge determined that the prosecutor did not engage in misconduct because he had no reason to believe that the entire videotape, and not merely the portion he provided to defense counsel, was exculpatory. Under the applicable standard of review, we defer to the judge on this issue.

Finally, the Commonwealth claims that the judge should have considered the defendant's confession, allegedly made during a court-ordered psychiatric examination conducted pursuant to G. L. c. 123, § 15(*b*). The Commonwealth argues that the confession is relevant to the question whether "justice may not have been done." Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001). However, the confession is not even in the record; nor is there any information concerning the conduct of the examination including, for example, warnings or waivers of rights. Moreover, G. L. c. 233, § 20B(*b*), as appearing in St. 1990, c. 177, § 361, expressly mandates that any statement made in the course of such an examination "shall be admissible only on issues involving the patient's mental or emotional condition but not as a confession or admission of guilt." Here, protestations to the contrary notwithstanding, the Commonwealth seeks to use the statements as a confession of guilt. This is not permitted under the statute.

As for whether justice was done, while informed by the strength of the evidence as it may have influenced the jury's verdict, such a determination is not dependent on the actual guilt or innocence of the defendant. See *Commonwealth* v. *Segovia*, 53 Mass. App. Ct. 184, 194 (2001) (motion for a new trial should have been allowed where defense counsel failed to file a motion to suppress the defendant's incriminating statements; right to a fair trial may take precedence over consideration of the actual guilt or innocence of the defendant). Cf. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 n.6 (1999) ("a substantial risk of a miscarriage of justice could still exist where a defendant is convicted based on compelling evidence, none of which should have been admitted at trial").

*Order allowing motion for new
trial affirmed.*