NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

18-P-832                                    Appeals Court

COMMONWEALTH  vs.  ADRIAN J. GONSALVES.

No. 18-P-832.

Plymouth.    May 3, 2019. – September 6, 2019.

Present:  Rubin, Desmond, & Ditkoff, JJ.

Jury and Jurors.  Practice, Criminal, New trial, Jury and
     jurors.

Indictment found and returned in the Superior Court
Department on September 19, 2014.

The case was tried before Richard J. Chin, J., and a motion
for a new trial, filed on June 13, 2017, was heard by him.

Keith Garland, Assistant District Attorney, for the
Commonwealth.
Glynis Mac Veety for the defendant.

RUBIN, J.  The day after a jury convicted the defendant of

manslaughter and acquitted him of assault and battery, the

prosecutor from the Plymouth County district attorney's office

who tried the case discovered that one of the jurors who

deliberated on the case had, prior to the start of the trial,

accepted an unpaid clerical internship with that district attorney's office, which was to begin one week after the trial concluded. The prosecutor made the discovery after trial when she sent a text message to the juror's father, a police officer with whom she had worked in the past. The text message said, "Your daughter was on my jury. I hope she enjoyed the experience!" The juror's father replied, "Yes she had a great experience. She is also doing an internship Tuesdays and Wednesdays at the DAs main office starting next week. You can talk to her about the case. Very interesting!"

Commendably and appropriately, the prosecutor, upon learning this information from the father's text message, immediately notified counsel for the defendant, who, alleging the juror was biased, moved for a new trial. The judge held an evidentiary hearing and allowed the defendant's motion. The Commonwealth now appeals.

Background. The following facts are taken from the judge's findings supplemented by the uncontested evidence. See Commonwealth v. Buck, 64 Mass. App. Ct. 760, 761 (2005). Juror no. 45 (the juror) was considering a career in law enforcement. In a juror questionnaire she reported that she was a part-time student, a sophomore in college. Prior to the defendant's trial, on April 23, 2017, she applied online to the Plymouth County district attorney's office for a summer internship. The

internship was part of the office's "Volunteer Undergraduate Internship Program" and ran from May 30 through August 4. The internship was seven-and-one-half hours per day, two days per week. The juror was interested in the justice system and viewed the internship as an experience to put on her resume and an opportunity to obtain future references. On May 4, 2017, she received an e-mail from the district attorney's office offering her the internship. She accepted the offer on May 5, 2017. The trial began ten days later, on May 15, 2017, and ended on May 23, 2017, one week before the juror was to start her internship.

Before voir dire, all prospective jurors completed a confidential questionnaire that asked, among other things, "Have you or anyone in your household or family ever worked for . . . [a] [l]aw enforcement agency?" In the judge's new trial memorandum, he reported that "[d]uring impanelment, this Court struck for cause several jurors who appeared biased based on present or previous employment in law enforcement. For example, this Court struck an attorney who previously was employed by the Plymouth County District Attorney's Office, and a police officer in a town in Plymouth County."

The juror checked the box to indicate her answer to the question was "Yes," and elaborated only, "My father is a Rockland police officer." She did not mention her future internship. At the evidentiary hearing, she testified that she

omitted it because she "hadn't started yet, so [she] didn't see that as something [she] had to put down." The judge credited this explanation and found that the juror "did not withhold information about . . . her internship with the District Attorney with an intent to deceive."

The judge also found that the juror had omitted from her answer the fact that in June of 2016, when she was nineteen, she worked for the Marshfield Police Department conducting an undercover alcohol sting in the town. Her father, a Rockland police officer, knew that the Marshfield police were looking for someone under the age of twenty-one to assist them. The juror worked for three nights for about two hours each night. She went to every restaurant and liquor store in town and attempted to purchase liquor. Two police officers supervised her, telling her where to go next. She reported back to the officers whether or not a particular establishment sold her liquor and with whom she interacted. She was paid by the Marshfield Police Department in cash for her assistance, receiving $150 per night. In addition, the judge found that in June of 2017, after serving as a juror in the instant matter, she again worked for the Marshfield police in their undercover alcohol sting. The judge found that "[w]hen filling out the questionnaire, it did not cross [the juror's] mind that the undercover stings were work

with the Police Department.  She did not view her participation in the stings as employment."

The judge concluded that the juror "incorrectly answered the questions relating to whether she had ever worked for law enforcement, but did not withhold information about her undercover work with the Marshfield Police and her internship with the District Attorney with an intent to deceive."  The judge found that the juror was not actually biased against the defendant.  However, he found "that [the juror's] acceptance of an internship with the District Attorney's Office mere days before the start of [the defendant's] trial gives rise to implied bias as a matter of law."  He also found that "employment by the police in an undercover sting on several occasions is a connection to police that is different in kind from the disclosed fact that [the juror's] father is a police officer.  [Her] active assistance of the police in enforcing the law makes it probable that she would be predisposed to credit police testimony and favor the Commonwealth's position, whether consciously or unconsciously.  This is particularly true given her interest in a career in law enforcement."  The judge concluded that on these two bases, if the court had had this information before trial, the juror could have been struck for cause, and the judge therefore ordered a new trial.

Discussion. The defendant does not now argue that the juror was actually biased, and we see no error in the judge's conclusion on this issue given his unchallenged findings that the juror's omissions were not motivated by an intent to deceive. We therefore must determine whether there was any error in the judge's conclusion the juror was impliedly biased. We conclude there was not. Because we decide the case on the basis of the juror's future employment with the prosecutor's office alone, we need not assess whether a new trial was required due to the juror's undisclosed employment in undercover work with the Marshfield police.

"The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as matter of law." United States v. Wood, 299 U.S. 123, 133 (1936). Significantly, though confusingly, a finding of implied bias does not mean that the individual is actually biased. In part, the doctrine of implied bias exists "to maintain the appearance of impartiality in our justice system." People v. Rhodus, 870 P.2d 470, 473 (Colo. 1994).

Bias is "conclusively presumed" -- i.e., implied -- when, among other things, a juror has a particular connection to the case, including when "the juror is an actual employee of the prosecuting agency." Commonwealth v. Mattier (No. 2), 474 Mass. 261, 275 (2016), quoting Commonwealth v. Amirault, 399 Mass.

617, 628 n.5 (1987). Compare Mattier, supra at 275-276 ("'[E]ven a tiny financial interest in the case' has required a juror to be excused for cause. Accordingly, courts have presumed bias in stockholders of for-profit corporations that are parties in a lawsuit" [citations omitted]). The question in this appeal boils down to this: Was the juror's connection to the case sufficiently like that of an actual employee of the prosecuting agency that the judge was correct to conclude she was impliedly biased?

We hold that it was. The seating of a juror who has accepted a position with the office prosecuting the case raises significant doubts about the fairness of the proceeding. Like an employee who has begun work, one who has accepted a position with the prosecuting agency might reasonably be expected to have some loyalty to the agency. A future employee, moreover, has an incentive to return a verdict favorable to the prosecution. Employees know that first impressions matter, and there is a danger that a future employee might believe that she would gain favor with her future employer by returning a favorable verdict, or that she would fear starting off on the wrong foot by returning an unfavorable one.

These considerations apply with full force to unpaid interns. See People v. Lynch, 95 N.Y.2d 243, 248 (2000) ("student intern employed at the prosecuting agency's office

. . . should have been dismissed for cause").  Because such interns receive no financial remuneration, interns' experiences and their relationships with superiors constitute their primary forms of compensation.  As an unpaid intern likely would believe that both might be affected by a vote to acquit, the intern has an incentive to try to gain favor with the lawyers in her agency by returning a verdict favorable to it.

The Commonwealth's arguments to the contrary fail.  First, it argues that the juror could not be dismissed because G. L. c. 234A, § 3, prohibits the exclusion of jurors on the basis of "occupation."  But the implied bias in this case arose not because of the juror's future occupation as an intern, but because her future employer was the prosecuting agency in this case.

Second, the Commonwealth argues that because neither the judge nor the attorneys asked the juror about her future employment, she did not consciously conceal it, and therefore, she is not impliedly biased.  But conscious concealment is not required for implied bias; regardless of whether it was consciously concealed, or even something the juror was required to disclose given the phrasing of the question she was asked, the fact of the juror's future employment created both an incentive for and an appearance of partiality.

"On a claim of structural error alleging that a jury were not impartial because a particular juror was biased, the defendant must show actual or implied juror bias. . . .  If the defendant is able to show such bias, the error is structural and he need not show that the verdicts were thereby affected." Commonwealth v. Hampton, 457 Mass. 152, 163 (2010).  The defendant here has made this showing.  The judge's decision to grant the defendant a new trial was therefore correct, and the order granting it is affirmed.

So ordered.