COMMONWEALTH *vs.* SUSAN FAPPIANO.

No. 06-P-539.

Hampden. April 10, 2007. - August 16, 2007.

Present: KANTROWITZ, DREBEN, & KAFKER, JJ.

*Practice, Criminal,* New trial, Competency to stand trial. *Battered Woman Syndrome.*

A Superior Court judge properly denied the criminal defendant's motion for a new trial that was based on newly discovered evidence that she suffered from battered woman syndrome, where the defendant failed to establish that the evidence was unknown to her or trial counsel and was not reasonably discoverable at the time of trial. [729-734]

INDICTMENTS found and returned in the Superior Court Department on May 30, 1997.

A motion for a new trial, filed on November 16, 2005, was heard by *Constance M. Sweeney*, J.

*Esther J. Horwich* for the defendant.

*Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. At the time of the criminal offenses on October 20, 1996, the defendant, Susan Fappiano, was the mother of three young children who were living with her: five year old Jeffrey Columbus, three year old Shy-la Harper, and fifteen month old Clyde Harper, Jr. She repeatedly beat them, eventually killing Clyde (she was tried as both a principal and a joint venturer).[1] On October 1, 1998, she was convicted of various offenses, including murder in the second degree, and those convictions were affirmed in an unpublished memorandum and

---

[1]Her live-in boyfriend, Alberto Torres, was also charged and, in a separate trial, convicted of numerous crimes, the most serious of which was murder in the first degree. See *Commonwealth* v. *Torres*, 442 Mass. 554 (2004).

order.[2] See *Commonwealth* v. *Fappiano*, 57 Mass. App. Ct. 1105 (2003).[3]

On November 16, 2005, Fappiano filed a motion for a new trial based upon newly discovered evidence, to wit, that she was suffering from battered woman syndrome at the time of the trial, which condition rendered her incompetent to participate in her defense and which, if known at the time of trial, would have been a real factor in the deliberations of the jury. The denial of that motion forms the basis of this appeal.[4] We affirm.

[2]She was also convicted of assault and battery by means of a dangerous weapon (belt) on Clyde Harper, Jr., G. L. c. 265, § 15A(*b*); two counts of wantonly or recklessly permitting another to commit an assault and battery on Clyde, causing bodily injury, G. L. c. 265, § 13J; two counts of wantonly or recklessly permitting another to commit an assault and battery on her daughter Shy-la Harper, causing bodily injury, G. L. c. 265, § 13J; wantonly or recklessly permitting another to commit an assault and battery on Jeffrey Columbus, causing bodily injury, G. L. c. 265, § 13J; assault and battery by means of a dangerous weapon (belt) on Jeffrey, G. L. c. 265, § 15A(*b*); assault and battery on Jeffrey, G. L. c. 265, § 13A; and assault and battery by means of a dangerous weapon (belt or woman's sandal) on Shy-la, G. L. c. 265, § 15A(*b*).

[3]The facts pertaining to the abuse, as described in this court's memorandum and order pursuant to rule 1:28, are, in pertinent part, as follows: "[T]he postmortem medical examination performed on Clyde revealed numerous recent as well as old injuries all over his body. . . . The injuries included lacerations, abrasions, pinch marks, whip-type marks, bruises, a broken femur and blunt force trauma to the abdomen [the cause of his death]. . . . The Commonwealth also presented evidence, by way of eyewitness testimony and admissions, of Fappiano's persistent use of physical force on Clyde and her other young children as a method of disciplining them. The evidence indicates that, at various times prior to Clyde's death, she vigorously inflicted such discipline on her children with open-handed blows, by kicking, by striking them with her own belt, and by beating them with her shoe, all with sufficient exertion to leave visible marks on their bodies. . . . Indeed, there were pattern injuries on Clyde's body that matched the buckle of the belt identified at trial as the one Fappiano used to administer her discipline."

[4]She also appeals from the denial of her motion for funds to hire an expert in forensic psychology and domestic violence. That motion improperly referenced G. L. c. 261, §§ 27A-27G, rather than the appropriate mechanism provided by Mass.R.Crim.P. 30(c)(5), as appearing in 435 Mass. 1502 (2001). See *Commonwealth* v. *Davis*, 410 Mass. 680, 683-684 (1991); *Commonwealth* v. *Swist*, 38 Mass. App. Ct. 907, 908, cert. denied, 516 U.S. 886 (1995). This misnomer resulted in the matter being incorrectly entered as an appeal to a single justice of the Appeals Court pursuant to G. L. c. 261, § 27D. The single justice ultimately reported the matter to a panel. The report, in these circumstances, was unnecessary. As the order denying the request for funds

According to Fappiano's affidavit submitted in support of the motion for a new trial, prior to Alberto Torres, she had had romantic relationships with three other men: Robert Gosselin,[5] Jeffrey Columbus,[6] and Clyde Harper, Sr.,[7] each of which included instances of physical, mental, and sexual abuse. Fappiano met Alberto Torres through Harper, when Torres and Harper were inmates together at the Hampden County house of correction. After Torres was released, he began living with Fappiano and her three children and began physically abusing Fappiano "almost immediately." Torres and Fappiano both hit the children. Torres hit Shy-la on the leg with a belt, tied Jeffrey up with a telephone extension cord, and knocked Jeffrey off the kitchen chair where he was doing homework. Fappiano's affidavit states that on the day Clyde died, Torres slapped Clyde and stood with his foot on Clyde's back.

"Whether an appeal is from the granting or the denial of a motion for a new trial, an appellate court will examine the motion judge's conclusion only to determine whether there has been a significant error of law or other abuse of discretion."

---

was, in effect, an interlocutory order ancillary to the motion for a new trial, the defendant may appropriately challenge the order in the context of the appeal from the order denying the motion for a new trial. See *Celester* v. *Commonwealth*, 440 Mass. 1035, 1036 (2004).

[5]In 1988, Fappiano met Robert Gosselin, with whom she had a son Christopher, and remained with him until 1990. After Gosselin punched her in the face, Fappiano obtained the first of several restraining orders against him.

[6]In 1990, Fappiano began a relationship with Jeffrey Columbus, who raped her when she was pregnant with their son, also named Jeffrey, causing her to obtain a restraining order. She later agreed to marry Columbus, believing that it would be better for her and the baby, but he was "very rough" towards the baby and did things such as "grab [Fappiano's] throat and put [her] in head-locks," and was verbally abusive towards both her and the baby. Fappiano became so frightened that she reported Columbus to a social worker, who had Fappiano placed in a women's shelter. After her eligibility in the shelter expired, she returned to live with Columbus, who continued to rape and verbally abuse her.

[7]After being placed in a homeless shelter, Fappiano moved in with Clyde Harper, Sr., with whom she began a relationship and became pregnant with their daughter Shy-la. During this time, Fappiano sought a divorce from Columbus and obtained another restraining order against him, which he violated, causing him to be sent to jail. Harper continually raped and physically beat Fappiano when they lived together, causing her to go to the hospital on multiple occasions for serious injuries. He was sentenced to jail for assaulting her, at which time she ended their relationship.

*Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986). " 'The decision of the motion judge is entitled to special deference if that judge also was the trial judge [as is the case here].' *Commonwealth* v. *Figueroa*, 422 Mass. 72, 77 (1996)." *Commonwealth* v. *Buck*, 64 Mass. App. Ct. 760, 762 (2005).

In her motion, Fappiano claimed that she was entitled to a new trial because of newly discovered evidence, specifically, a long history of physical, sexual, and emotional abuse she endured which resulted in her suffering from battered woman syndrome.[8] In *Commonwealth* v. *Pike*, 431 Mass. 212, 221 (2000), which was decided after Fappiano's trial, the Supreme Judicial Court discussed the relationship between a claim of battered woman syndrome and newly discovered evidence. In describing the syndrome, the court wrote:

> "Battered woman syndrome has been described as a ' "series of common characteristics that appear in women who are abused physically and psychologically over an extended period of time by the dominant male figure in their lives." *State* v. *Kelly*, 97 N.J. 178, 198 (1984). "Among the characteristics of such abused women are a decrease in self-esteem, an emotional dependence upon the dominant male and [a] type of psychological 'learned' helplessness arising out of an inability to predict or control the violence directed against them. Numbed by a dread of imminent aggression, these women are unable to think clearly about the means of escape from this abusive family existence; and this emotional paralysis is often reinforced by their traditional beliefs about the sanctity of home and family and their false hopes that things will improve." *People* v. *Torres*, 128 Misc. 2d 129, 132 (N.Y. Sup. Ct. 1985).' *Commonwealth* v. *Moore*, 25 Mass. App. Ct. 63, 66 (1987)."

*Commonwealth* v. *Pike, supra.*

In *Pike*, the defendant was convicted of murder in the second degree arising out of a plot, with her boyfriend, to break into

---

[8]We note that, to date, Fappiano has not been specifically diagnosed with battered woman syndrome by a licensed professional. Her denied motion for funds to retain an expert in forensic psychology and domestic violence was for that purpose.

the home of the victim, wait for him to arrive home, kill him, and steal his car. *Id.* at 213. The defendant filed a motion for a new trial, claiming she suffered from battered woman syndrome, which was newly discovered evidence because the syndrome prevented her from disclosing this evidence to her attorney. *Id.* at 217.

The court recognized the potential viability of such a claim, reasoning "that a common characteristic of battered women is a 'learned helplessness,' which manifests itself in an inability of the woman to perceive herself as abused, or to gain help by communicating the abuse to others." *Id.* at 222. See *Commonwealth* v. *Conaghan*, 433 Mass. 105, 109-110 (2000) (divided court held that defendant, who had filed motion for new trial claiming she was incompetent due to battered woman syndrome when she tendered her plea to manslaughter four years earlier, was entitled to competency evaluation, pursuant to G. L. c. 123, § 15[*a*]).

As she had "the inability to perceive herself as abused and to communicate the abuse to others," Fappiano argues that she was unable to disclose her past abuse to her attorney before trial and, consequently, was unable to assist counsel "in preparing a defense that served her best interests." *Commonwealth* v. *Conaghan, supra* at 109, quoting from *McMaugh* v. *State*, 612 A.2d 725, 732 (R.I. 1992). In a supporting affidavit, her trial counsel stated that he had difficulty obtaining information from Fappiano because of her emotional state, and that she had significant gaps in her memory. He further stated that her inability to communicate precluded him from being aware that she was suffering from battered woman syndrome and, consequently, he did not defend her on that ground.

The judge rejected Fappiano's argument, noting that prior to trial Fappiano was examined on two separate occasions by two different court-appointed experts and in both instances was found to be competent.[9] Further, the judge, in denying Fappiano's motion, indicated that "my own observations of the defendant during her trial satisfied me that she was fully competent. She consulted [with] her trial attorney as various witnesses testified to matters critical to the issue of her culpability. Counsel consulted

[9]One of the designated forensic psychologists authored his report on June 19, 1997, and the other wrote his report on September 3, 1998.

with her just before he would conclude the examination of each witness and oftentimes the consultation would be followed by counsel asking several more questions of the witness."

While the judge's rejection of Fappiano's competency argument may be viewed as an implicit rejection of her contention that she suffered from battered woman syndrome,[10] we need not reach that issue, as we determine that any such evidence was not newly discovered.

"A defendant seeking a new trial on the basis of newly discovered evidence must establish both that the evidence is newly discovered and that it casts real doubt on the justice of the conviction." *Commonwealth* v. *Pike*, 431 Mass. at 218. See Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001) ("The trial judge upon motion in writing may grant a new trial at any time if it appears that justice may not have been done"). "[T]he allegedly new evidence . . . must . . . *have been unknown to the defendant or his counsel and not reasonably discoverable by them at the time of trial* . . . . The defendant has the burden of proving that reasonable pretrial diligence would not have uncovered the evidence." (Emphasis original.) *Commonwealth* v. *Weichell*, 446 Mass. 785, 798-799 (2006), quoting from *Commonwealth* v. *Grace*, 397 Mass. at 306.

Fappiano has failed to "establish that the evidence was unknown to the defendant or trial counsel and not reasonably discoverable at the time of trial." *Commonwealth* v. *Shuman*, 445 Mass. 268, 271 (2005). She and her attorney were aware, prior to trial, of several instances of abuse involving Torres. In statements

---

[10]While we do not reach the issue, it is difficult to reconcile the concept of "learned helplessness," as it is currently defined in our case law, with the defendant's history of seeking help, yet repeatedly returning to abusive relationships. See notes 5, 6, and 7, *supra.* As psychiatric and psychological studies further examine battered woman syndrome, more light will undoubtedly be shed in this area, which may require, in the future, the law to conform with new medical findings and realities. It is conceivable that such findings could amplify upon the notion of "learned helplessness," holding, for example, that the symptoms we today attribute to battered woman syndrome do not adequately and fully explain it. See Robinson, The Glue that Binds: Deconstruction of Walker's Battered Woman Syndrome, Domestic Violence Report (February/March 2000), reprinted in 2 Zorza, Violence Against Women 8-1 (2004). See also Dalton & Schneider, Battered Women and the Law 224-225 (2001).

given to the police shortly after the incident, Fappiano disclosed that Torres physically harmed her when she "scared him once in the shower," and he hit her head against the wall on another occasion; Torres mainly subjected her to emotional abuse; and on the day of the incident she "wanted to call 911" but was afraid that Torres would hit her. These statements were admitted during the trial. In addition, at sentencing, counsel argued that Fappiano's "choice of *men* was poor, and that's putting it mildly"; that she was "weak because she doesn't have great self-esteem, and *men* she chose were not *men* who in any way were going to do positive things for them, their children or for Miss Fappiano" (emphasis added). Counsel's choice of words at sentencing appear to indicate a wider knowledge of Fappiano's abuse history than was disclosed during the trial itself.[11] Compare *Commonwealth* v. *Pike*, 431 Mass. at 217, 220 n.7 (defendant disclosed abuse for first time at motion for new trial, although she asked defense counsel prior to trial whether evidence of abuse "would make a difference in her case").

Although the trial predated the *Pike* and *Conaghan* decisions, the significance of Fappiano's abuse history and the potential applicability of battered woman syndrome to this defendant were well known at the time.[12] In *Commonwealth* v. *Lazarovich*, 410 Mass. 466, 473-474 (1991), released seven years prior to Fappiano's trial, the Supreme Judicial Court assumed, without deciding, that evidence of battered woman syndrome may be relevant in prosecution for abuse by a mother of her child. See

[11]We note that in 1994, Fappiano was referred by a therapist at the Massachusetts Society for the Prevention of Cruelty to Children to a psychologist whose report of October 28, 1994, outlined in detail her history and the past abuses she had suffered.

[12]In his affidavit, trial counsel indicates that "[i]t was very difficult to obtain information from Ms. Fappiano as a result of her emotional state . . . [and that as] a result of her inability to communicate with me, I was not aware that she was suffering from Battered Woman's Syndrome." The judge need not have credited this given her own observations, as well as the competency evaluation of one of the designated forensic psychologists, see note 9, *supra* ("[Ms. Fappiano] demonstrated a good grasp of the nature of her discussions with her attorney. She expressed confidence in his ability and commitment to her defense, and acknowledged that she has no difficulty understanding his advice and concerns [he] raises. Also, when asked about her own reasoning with regard to her defense, she demonstrated adequate judgment and decision-making ability").

G. L. c. 233, § 23F, inserted by St. 1996, c. 450, § 248 (admissibility of past physical, sexual, or psychological abuse of defendant). Thus, at the time of trial, not only was there knowledge of the existence of abuse, but further evidence was "reasonably discoverable."[13] *Commonwealth* v. *Weichell*, 446 Mass. at 798, quoting from *Commonwealth* v. *Grace*, 397 Mass. at 306. Fappiano has failed to establish, as was her burden, "that reasonable pretrial diligence would not have uncovered the evidence." *Id.* at 799, quoting from *Commonwealth* v. *Grace*, *supra.*

*Conclusion.* As *Commonwealth* v. *Pike*, 431 Mass. at 222, counsels, "in appropriate cases, evidence of battered woman syndrome may constitute 'newly discovered' evidence, even though the condition may have existed prior to, or at the time of, trial." This is not such a case. The order denying the motion for a new trial is affirmed.[14]

*So ordered.*

---

[13]Appellate counsel is not claiming that trial counsel was ineffective.

[14]As we conclude that the motion for a new trial was appropriately denied on the ground that the evidence submitted in support of it was not newly discovered, we cannot say that the judge abused her discretion when she concluded that the proposed expenditure of funds was unlikely to result in a meritorious ground for a new trial.