NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11988

COMMONWEALTH  vs.  DANIEL FRANCIS.


Suffolk.     March 8, 2016. - July 20, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Controlled Substances.  Constitutional Law, Conduct of
     government agents.  Due Process of Law, Disclosure of
     evidence, Presumption.  Practice, Criminal, New trial,
     Conduct of government agents, Disclosure of evidence,
     Presumptions and burden of proof.  Evidence, Certificate of
     drug analysis, Disclosure of evidence, Presumptions.



     Indictments found and returned in the Superior Court
Department on March 13, 2006.

     The cases were tried before Frank M. Gaziano, J., and a
motion for a new trial, filed on October 1, 2012, was considered
by him.

     After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


     David J. Rotondo for the defendant.
     Benjamin B. Selman, Committee for Public Counsel Services,
for Committee for Public Counsel Services.
     Vincent J. DeMore, Assistant District Attorney, for the
Commonwealth.

GANTS, C.J.  This is yet another in the series of cases arising from the misconduct of Annie Dookhan when she was employed as a chemist at the William A. Hinton State Laboratory Institute (Hinton drug lab).  Here, the defendant was found guilty at trial of the trafficking and distribution of cocaine.  At trial, certificates of drug analysis (drug certificates) were admitted in evidence, signed by Dookhan as an assistant analyst, that declared that the substances in question were cocaine and that set forth their weight.  The defendant learned of Dookhan's misconduct after trial, and now moves for a new trial based on that misconduct.  At issue on appeal is whether a defendant found guilty at trial who moves for a new trial is entitled to the same conclusive presumption of "egregious government misconduct" that we applied in Commonwealth v. Scott, 467 Mass. 336, 352-354 (2014), to cases where a defendant seeks to withdraw his or her guilty plea after learning of Dookhan's misconduct.

We conclude that a defendant in these circumstances is entitled to the same conclusive presumption.  The consequence of the conclusive presumption is that we deem it error to have admitted the drug certificates or comparable evidence regarding Dookhan's drug analysis where the defendant had no knowledge of Dookhan's misconduct and therefore no opportunity to challenge the admissibility or credibility of that evidence.  We further

conclude that the appropriate standard to be applied to the erroneous admission of this evidence is the prejudicial error standard applied to preserved nonconstitutional errors. Applying that standard, we conclude that, apart from the drug certificates, the evidence regarding the weight and identity of the substances in question was not overwhelming, and we therefore are not "sure that the error did not influence the jury, or had but very slight effect." Commonwealth v. Vinnie, 428 Mass. 161, 163, cert. denied, 525 U.S. 1007 (1998), quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994). Consequently, we vacate the defendant's convictions and grant the defendant a new trial.[1]

Background. On October 4, 2006, the defendant was convicted by a Superior Court jury of trafficking in twenty-eight grams or more of cocaine, in violation of G. L. c. 94C, § 32E (b) (2),[2] and unlawful distribution of cocaine, in violation of G. L. c. 94C, § 32A (c). We summarize the evidence at trial, reserving discussion of some of the evidence for later.

---

[1] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services.

[2] The defendant was indicted and convicted in 2006, prior to the passage of St. 2012, c. 192, § 21, which increased the drug weights in G. L. c. 94C, § 32E (b). The increased drug weights do not apply to him. See Commonwealth v. Didas, 471 Mass. 1, 8-10 (2015).

On November 22, 2005, Boston police Officer Andrew Miskell, along with other officers in the drug control unit, conducted physical surveillance of the area outside the Forest Hills subway station in the Jamaica Plain section of Boston. At approximately 8:30 P.M., Officer Miskell observed a man, later identified as Marcus Henderson, on three separate occasions leave the passenger seat of a motor vehicle, walk to a public pay telephone, make quick telephone calls, and then return to his vehicle and wait. After approximately ten minutes, a man, later identified as the defendant, arrived and parked his vehicle about thirty to forty feet in front of Henderson's vehicle. Henderson then left his vehicle and entered the passenger's side of the defendant's vehicle.

Officer Miskell saw the two men turn towards each other; after "a brief encounter," Henderson left the defendant's vehicle and walked towards his vehicle. Two other members of the drug control unit, Detective Aaron Blocker and Officer Lawrence Celester, approached Henderson, and Detective Blocker told Henderson that he had "to conduct a threshold inquiry." Henderson then placed a plastic bag of what appeared to the officers to be "crack" cocaine in his mouth. Officer Celester told Henderson that they were not interested in him, and if he wanted to cooperate, he should give them the drugs. Henderson then spit out the bag. After Henderson was placed under arrest,

Detective Blocker informed Officer Miskell that he had recovered drugs from Henderson.

Officer Miskell followed the defendant's vehicle and, when it was stuck in traffic, approached the driver's side on foot. He displayed his badge, announced that he was a police officer, and ordered the defendant to step out from the vehicle. Officer Miskell observed that the defendant held cash in his left hand, which the officer removed from him upon placing him under arrest. The cash that was seized from the defendant's hand totaled $360. An additional $597 in cash was recovered from the defendant during the booking process.

The defendant's vehicle was searched in the parking lot of the police station later that evening by Sergeant Detective William Feeney. He observed a "Gunk Fix-A-Flat" can in a bag on the back seat that he recognized as a "hide-a-can." He unscrewed the removable bottom portion of the can and found two plastic bags inside that contained individually wrapped bags of a substance that he believed to be crack cocaine.

At the police station, the defendant was informed of the Miranda rights and interviewed by Officer Kenneth Reid in an unrecorded conversation. Officer Reid asked the defendant "where he got his drugs from and how much drugs he was selling." The defendant said that he sold between one-quarter and one-half kilograms of cocaine every one and one-half weeks. Officer Reid

told the defendant that he would like to learn who was supplying the defendant with this cocaine, and the defendant told him that his supplier was a "white male from the [N]orth [S]hore area"; that he "would call his supplier up and order a half a kilogram of cocaine"; and that "[the police] could arrest [the supplier] . . . when [the supplier] made the cocaine delivery." Officer Reid informed the defendant that the district attorney would have to approve using him as a confidential informant, and that that would have to wait until he was arraigned and obtained counsel.

Through the testimony of Detective Blocker and Sergeant Detective Feeney, the Commonwealth offered in evidence three drug certificates signed by Dookhan as "Assistant Analyst" on January 20, 2006. The first drug certificate regarding the substance seized from Henderson declared that the tested substance was cocaine and that it weighed 1.34 grams. The second certificate declared that the substance contained in eight plastic bags was cocaine with a net weight of 19.66 grams. The third certificate declared that the tested substance contained in thirty nine plastic bags was cocaine with a net weight of 19.04 grams.

After the Commonwealth rested, Henderson testified that he telephoned the defendant and waited for him at the subway station because he wanted to give the defendant some money to

purchase beer and liquor for him for Thanksgiving.  When the defendant arrived, Henderson entered the defendant's vehicle, gave the defendant between eighty and one hundred dollars, along with directions to his home, and showed the defendant a small package of cocaine that he had in his mouth.  He stated that the defendant had not given the cocaine to him.

The defendant testified that he and Henderson "had some arrangement to get together for Thanksgiving," and that Henderson gave him one hundred dollars in cash for food, beverages, and liquor, as well as directions to Henderson's home, after Henderson entered his vehicle.  Henderson also showed him "a substance," and asked if he knew someone who would purchase it.  The defendant said that he did not.

In 2012, six years after the jury returned their guilty verdicts, the defendant moved for a new trial pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), claiming that he was entitled to a new trial because of newly discovered evidence arising from Dookhan's misconduct in conducting drug analyses at the Hinton drug lab and because he was deprived of due process by the failure of the Commonwealth to provide him with discovery regarding her misconduct, in violation of the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.  The trial judge denied the motion, finding that the

evidence questioning the validity of the drug certificates was not newly discovered because the defendant failed to show "that Dookhan engaged in misconduct in his case, or even that she was engaged in misconduct at the time the evidence in the defendant's case was tested."  The judge further found that, even if the evidence were newly discovered, it is not material because the defendant admitted that he sold one-quarter to one-half kilogram of cocaine every one and one-half weeks, and "referred to the evidence recovered from Henderson as crack cocaine."[3]  The judge further found that the defendant had not

---

[3] The only statements by the defendant that arguably could be construed as referring "to the evidence recovered from Henderson as crack cocaine" came in response to the following two questions of the prosecutor on cross-examination:

Q.:  "I want to draw your attention back to the testimony you gave about [Marcus] Henderson being in your car.  You just told the jury that Mr. Henderson showed you a piece of crack and he asked you if you knew anyone who would purchase it."

A.:  "Yes, sir."

Q.:  "So it's your testimony today that this is a series of bad luck that the police were conducting surveillance at Forest Hills T stop on November 22nd, 2005; bad luck that Mr. Henderson got into your car with about a hundred dollars['] worth of crack; bad luck that he asked you, coincidentally, if you knew somebody that could purchase it; and further bad luck that the police found three thousand dollars['] worth of drugs in your car and nine hundred and fifty-seven dollars in cash on your person when you're employed.  That's just bad luck?"

A.:  "Yes, sir."

been deprived of due process because "the evidence was not in the possession, custody, or control of the prosecutor, [and] the Commonwealth's failure to disclose that which it did not know existed cannot be a failure to comply with its obligations under Brady [v. Maryland, 373 U.S. 83 (1963)]."

A panel of the Appeals Court affirmed the judge's order in an unpublished memorandum and order issued pursuant to its rule 1:28. See Commonwealth v. Francis, 88 Mass. App. Ct. 1101 (2015). The panel declared that "this case did not turn on the results of the drug analysis," and concluded, "In short, because the defendant admitted to selling large quantities of cocaine and acknowledged that the substance possessed by Henderson was cocaine, no ground has been made to appear on this record to cause us to disturb the judge's denial of the defendant's motion for a new trial." We granted the defendant's motion for further appellate review.

Discussion. In Scott, 467 Mass. at 346, we adopted the two-pronged test in Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006), which requires a defendant who sought to vacate a guilty plea because of government misconduct to show "both that 'egregiously impermissible conduct . . . by government agents . . . antedated the entry of his plea' and that 'the

As earlier noted, on direct examination the defendant referred to the "substance" in Henderson's mouth and did not characterize it as cocaine or crack.

misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice.'" In considering whether the defendant in Scott had satisfied the first prong of this test, we summarized the findings of the State police investigation of Dookhan's conduct at the Hinton drug lab. We noted that, among other misconduct:

- She "admitted to 'dry labbing' for two or three years prior to her transfer out of the lab in 2011, meaning that she would group multiple samples together from various cases that looked alike and then test only a few samples, but report the results as if she had tested each sample individually." Scott, 467 Mass. at 339.

- She admitted to "contaminating samples intentionally, including turning negative samples into positive samples on at least a few occasions." Id.

- She admitted that she removed samples from the evidence locker in breach of lab protocols, postdated entries in the evidence log book, and forged an evidence officer's initials. Id.

- She falsified reports intended to verify that the gas chromatography-mass spectrometer machine used in "confirmatory" drug testing was functioning properly before she ran samples through the machine. Id. at 339-340.

We concluded that, because Dookhan "made a number of affirmative misrepresentations by signing drug certificates and testifying to the identity of substances in cases in which she had not in fact properly tested the substances in question," Dookhan's misconduct was "egregious."  Id. at 348.

We also concluded that, even though there was no indication that any prosecutor knew of her misconduct, id. at 350 n.7, her egregious misconduct was "attributable to the government" for purposes of a motion for new trial, id. at 350 & n.7, because as a primary and secondary chemist she "participated in the investigation or evaluation of the case" and "reported to the prosecutor's office concerning the case."  Id. at 349, quoting Commonwealth v. Martin, 427 Mass. 816, 824 (1998).

We also noted that Dookhan acknowledged "that she may not be able to identify those cases in which she tested the samples properly and those in which she did not."  Scott, 467 Mass. at 339.  "Thus, even if Dookhan herself were to testify in each of the thousands of cases in which she served as primary or secondary chemist, it is unlikely that her testimony, even if truthful, could resolve the question whether she engaged in misconduct in a particular case."  Id. at 352.  Because it was "reasonably certain . . . that her misconduct touched a great number of cases," id., but "may be impossible" for any defendant to prove that the drug analysis in his or her case was tainted

by her misconduct, id. at 351, we recognized that her "particularly insidious form of misconduct, which belies reconstruction," resulted in "a lapse of systemic magnitude in the criminal justice system," id. at 352.

To protect "the due process rights of defendants, the integrity of the criminal justice system, [and] the efficient administration of justice . . . in the wake of government misconduct that has cast a shadow over the entire criminal justice system," we exercised our superintendence power and held that, where Dookhan signed the drug certificate in a defendant's case as an assistant analyst, a defendant who seeks to vacate his or her guilty plea after learning of Dookhan's misconduct "is entitled to a conclusive presumption that egregious government misconduct occurred in [his or her] case." Id. Noting that "the full extent of Dookhan's misconduct may never be known," id. at 341, we did not limit the conclusive presumption to any time period; it applies in every case where Dookhan signed the drug certificate as an assistant analyst. See id. at 352-353.

The consequence of the conclusive presumption of egregious government misconduct is that a defendant could satisfy the first prong of the Ferrara test simply by showing that Dookhan had signed the drug certificate in his or her case as an assistant analyst. The defendant then would need to satisfy the

second prong of that test by demonstrating "a reasonable probability that he [or she] would not have pleaded guilty had he [or she] known of Dookhan's misconduct." Id. at 355.

1. Applicability of conclusive presumption where defendant is found guilty at trial. In Scott, we declared that the remedy of a conclusive presumption of egregious government misconduct is "sui generis," and "is intended to apply only to this narrow class of cases in which a defendant seeks to withdraw his or her guilty plea after having learned of Dookhan's misconduct." Scott, 467 Mass. at 353-354. Because the defendant in Scott sought a new trial after pleading guilty, we did not address whether the remedy would also apply where a defendant seeks a new trial after having been found guilty at trial. We address that issue here, and conclude that the same conclusive presumption of egregious government misconduct applies where a defendant seeks to vacate his or her conviction at trial after learning of Dookhan's misconduct.[4]

---

[4] We declared in Commonwealth v. Scott, 467 Mass. 336, 354 (2014), that this "presumption shall not apply in a trial in which the defendant seeks to impeach the testing process utilized at the Hinton drug lab, including those new trials conducted following a grant of a defendant's motion to withdraw a guilty plea pursuant to our holding in this case." But this means only that the conclusive presumption of egregious government misconduct shall not be applied in a future trial by a finder of fact who is evaluating the credibility of the testimony of a laboratory chemist regarding the testing process used to identify the substance in question as a controlled substance.

Regardless whether a defendant pleads guilty to a drug offense or is found guilty at trial, where Dookhan examined the substance in question as a primary or confirmatory chemist, the evidence is still potentially tainted by Dookhan's misconduct, the taint is still attributable to the government, and it may still be impossible for the defendant to prove that the drug analysis in his or her case was actually tainted by Dookhan's misconduct. A trial may be tainted by egregious government misconduct just as surely as a guilty plea. Therefore, we conclude that, in deciding the defendant's motion for a new trial, the judge erred in not applying the conclusive presumption of egregious government misconduct that we declared in Scott. See Commonwealth v. Gaston, 86 Mass. App. Ct. 568, 571, 573 (2014) (applying conclusive presumption of egregious government misconduct in motion for new trial after jury trial where Dookhan was confirmatory chemist and primary chemist testified at trial that substance was cocaine).[5,6]

As in Scott, the consequence of the conclusive presumption of egregious government misconduct for a defendant convicted at

_____

[5] The judge's denial of the motion for a new trial occurred more than three months after our opinion issued in Scott, 467 Mass. 336.

[6] The Commonwealth conceded at oral argument that there was no sound reason why the conclusive presumption of egregious government misconduct would apply to a motion for a new trial following a guilty plea but not a comparable motion following conviction at trial.

trial is that a defendant who shows that Dookhan had signed the drug certificate in his or her case as an assistant analyst is entitled to a new trial if he or she can show prejudice resulting from the admission of that evidence. However, the prejudice standard in Scott, i.e., that "the defendant must demonstrate a reasonable probability that he [or she] would not have pleaded guilty had he [or she] known of Dookhan's misconduct," Scott, 467 Mass. at 354-355, cannot serve as a prejudice standard where a defendant is convicted at trial. We consider now what showing of prejudice is required to warrant a new trial where a defendant is convicted at trial with evidence tainted by egregious government misconduct.

2. Prejudice standard. Where a prosecutor, investigator, or analyst whose conduct is "attributable to the government," see Scott, 467 Mass. at 350, deliberately fabricates evidence, such egregious government misconduct violates a defendant's constitutional right to due process under the Fourteenth Amendment. See Napue v. People, 360 U.S. 264, 269 (1959) ("it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment"); Halsey v. Pfeiffer, 750 F.3d 273, 292 (3d Cir. 2014) ("[t]o the best of [the court's] knowledge, every court of appeals that has considered the question of whether a [S]tate actor has violated the defendant's

right to due process of law by fabricating evidence to charge or convict the defendant has answered the question in the affirmative"); Brown v. Miller, 519 F.3d 231, 237 (5th Cir. 2008) ("the deliberate or knowing creation of a misleading and scientifically inaccurate serology report amounts to a violation of a defendant's due process rights").  If we were to conclude that the government had fabricated evidence against a defendant, we would declare it constitutional error and, at a minimum, order a new trial unless we were satisfied that the admission of the fabricated evidence was harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 24 (1967) (before a "[F]ederal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt").

In Scott, we did not conclude that Dookhan engaged in egregious government misconduct in every case where she signed a drug certificate as an assistant analyst.  Rather, we exercised "our superintendence power to fashion a workable approach to motions to withdraw a guilty plea brought by defendants affected by this misconduct," id. at 352, and conclusively presumed that Dookhan engaged in egregious government misconduct in all such cases.  We fashioned this remedy out of concern for the due process rights of defendants, the integrity of the criminal justice system, and the efficient administration of justice,

id., but we did not declare that this remedy was constitutionally required. The consequence of this remedy was that the defendant was released from the obligation to prove egregious government misconduct and needed only to prove prejudice to obtain a new trial.

Because the conclusive presumption was the product of our superintendence power rather than our obligation to enforce the constitutional rights of criminal defendants, we conclude that the appropriate prejudice standard is the standard applied to preserved nonconstitutional errors, which requires reversal of a conviction unless we are "sure that the error did not influence the jury, or had but very slight effect." Vinnie, 428 Mass. at 163, quoting Flebotte, 417 Mass. at 353. In essence, we apply the conclusive presumption and deem it error to have admitted the drug certificates or comparable evidence regarding Dookhan's drug analysis where the defendant had no knowledge of Dookhan's misconduct and therefore no opportunity to challenge the admissibility or credibility of that evidence. We apply the standard for preserved errors because, where the defendant did not have a genuine opportunity to raise his or her claim at the time of trial, we review the claim as if it had been properly preserved. See, e.g., Commonwealth v. Vasquez, 456 Mass. 350, 355-357 (2010); Commonwealth v. Randolph, 438 Mass. 290, 293-294 (2002). That exception to the preserved error requirement

applies here, where the defendant had no knowledge of Dookhan's egregious government misconduct at the time of trial, and therefore no opportunity to claim that the certificates of analysis should not be admitted in evidence.

Applying the preserved error standard is especially appropriate because Dookhan's egregious government misconduct is material exculpatory evidence that the prosecution constitutionally was obligated to disclose to the defendant, even though the prosecutor did not know of her misconduct until long after the conclusion of trial. In Scott, 467 Mass. at 349, quoting Martin, 427 Mass. at 824, we noted that "a prosecutor's duty to disclose exculpatory evidence extends to information in the possession of a person who 'has participated in the investigation or evaluation of the case and has reported to the prosecutor's office concerning the case.'" We concluded that, where Dookhan was the primary or secondary chemist who examined a questioned substance, she falls within the rubric of an agent of the prosecution team and, in considering a motion for a new trial, information in her possession is deemed to be in the possession of the prosecution. Scott, supra at 349-350.

Here, drug certificates signed by Dookhan as an assistant analyst were admitted in evidence under G. L. c. 22C, § 39, without the testimony of Dookhan or any other analyst that declared that the substances in question were cocaine and that

set forth their net weight.[7]  These certificates were admissible

because the case was tried in 2006, three years before the

United States Supreme Court declared that the admission in

evidence of such certificates without the testimony of a

certifying analyst violates the defendant's right to confront

witnesses under the Sixth Amendment to the United States

Constitution and the due process clause of the Fourteenth

Amendment.  Melendez-Diaz v. Massachusetts, 557 U.S. 305, 329

(2009).[8]  Applying the conclusive presumption, we deem it error

to have admitted those certificates, and applying the

prejudicial error standard, we now examine the evidence at trial

to determine whether the error in admitting those certificates

"did not influence the jury, or had but very slight effect."

---

[7] General Laws c. 22C, § 39, was amended in 2012.  See St. 2012, c. 139, § 56.  The current version of § 39 (b) is substantially the same as the version of § 39 in effect at the time of the defendant's trial and provides:

> "A certificate by a chemist or analyst . . . of the department . . . of the result of the chemist's or analyst's . . . analysis, signed and sworn to by that chemist or analyst . . . , shall be prima facie evidence of the composition, quality and, when appropriate, net weight of the substance or any mixture containing the substance."

[8] Because the defendant seeks a new trial on collateral review rather than direct appeal, the defendant is not entitled to the benefit of that ruling.  See Commonwealth v. Melendez-Diaz, 460 Mass. 238, 239-240 (2011) (rule announced by United States Supreme Court in Melendez-Diaz v. Massachusetts, 557 U.S. 305 [2009], does not apply retroactively to cases on collateral review).

See Vinnie, 428 Mass. at 163, quoting Flebotte, 417 Mass. at 353.

Before we consider the evidence, we note that the prosecutor in opening statement referred to the drug certificates by telling the jury, "You'll hear that those bags were submitted, pursuant to the policies, and that they were tested and weighed, and it comes out to over twenty eight grams."  The judge in his final instructions told the jury, in accordance with G. L. c. 22C, § 39, that the certificates were "'prima facie evidence' of the composition, quality, and net weight of the substance," which the judge explained meant that, if the jury were to "accept that evidence," they were "permitted but not required to conclude that the substance was cocaine."

We first consider the conviction of trafficking in cocaine, in violation of G. L. c. 94C, § 32E (b) (2), where the Commonwealth was required to prove beyond a reasonable doubt, among other elements, that the substance in the can found in the defendant's vehicle was cocaine and that the weight of the cocaine was in excess of twenty-eight grams.  Here, the drug certificates provided the only direct evidence of the cumulative weight -- 38.7 grams.  Aside from the certificates, the sole evidence concerning the weight was furnished by Boston police Detective Robert Pieroway, who testified as an expert witness regarding street-level drug sales.  He examined the two larger

plastic bags seized from the can in the defendant's vehicle, and stated that one of the larger plastic bags contained "four or five" small individually knotted plastic bags "with a couple grams of cocaine in each one." He said that the smaller plastic bags within the other larger plastic bag "appear to be just about a gram," but he added, "I don't know how much they weigh, but they could be like a couple grams apiece." This evidence of weight is far from overwhelming.

Nor was the weight so much more than twenty-eight grams that we can infer that the jury were able to discern that the element regarding weight was satisfied from the contents of the plastic bags alone. Compare Commonwealth v. Connolly, 454 Mass. 808, 832 (2009). The difference between the declared weight and twenty-eight grams was only 10.7 grams, which is slightly more than the weight of four pennies. See Commonwealth v. Montoya, 464 Mass. 566, 573-574 (2013).

It is a closer call whether the erroneous admission of the drug certificates "did not influence the jury, or had but very slight effect" as to the identity of the substance, but after careful analysis we conclude that, without the drug certificates, the evidence of identity was not overwhelming. Numerous police officers testified that the substance in Henderson's mouth and in the can appeared to be cocaine, and that its packaging and storage were consistent with the way

cocaine is typically handled by drug dealers. But none testified to any expertise in narcotics identification, and none conducted any field testing. See Commonwealth v. Charles, 456 Mass. 378, 382 (2010) ("arresting police officers, neither of whom . . . had specialized training or experience in narcotics identification, offered only conclusory, and largely equivocal, testimony regarding the composition of the substances," and did not articulate how their expertise permitted them to identify substance as cocaine). Compare Connolly, 454 Mass. at 831-832 (positive result on field test supported finding that erroneous admission of drug certificates was harmless beyond a reasonable doubt).

The Commonwealth emphasizes the defendant's admission to Officer Reid that he purchased substantial quantities of cocaine every one and one-half weeks from a supplier, but this admission was made in an attempt to persuade the police to elicit his cooperation in return for leniency, and fails to shed light on the true composition and weight of the substances in Henderson's mouth or in the can. The Commonwealth also points to the defendant's affirmative answers to the two compound questions asked of him on cross-examination, where the Commonwealth claims that the defendant admitted that the substance in Henderson's mouth was crack cocaine and the substance in the can found in the vehicle was drugs. See note 3, supra. But no reasonable

reading of this testimony would give much weight to these so-called admissions, especially in light of the defendant's testimony on direct examination that Henderson had shown him "a substance" and asked if he would purchase it. To be sure, the defendant did not challenge the identity of the substances as part of his defense, but such a defense would likely have been futile because of the admission of the drug certificates, and in any event, "[t]he Commonwealth's burden of proving every element of its case cannot be transferred to the defendant because of his counsel's choice of defense." Vasquez, 456 Mass. at 367-368. See Commonwealth v. Shea, 398 Mass. 264, 269 (1986) ("defendant's theory of his case cannot relieve the Commonwealth of its burden of proving every element of a crime beyond a reasonable doubt"). Because the evidence independent of the drug certificates did not overwhelmingly prove that the substance at issue was cocaine, we cannot conclude that the Commonwealth has met its burden of proving that the admission of the drug certificates did not influence the jury and or had only slight effect on their verdicts. See, e.g., Montoya, 464 Mass. at 572-573; Charles, 456 Mass. at 382-384.

Conclusion. For the reasons stated, the order denying the motion for a new trial is reversed, the judgments of conviction are vacated, and the case is remanded to the Superior Court for a new trial.

So ordered.