In 2010, a Superior Court jury convicted the defendant of trafficking in cocaine in an amount of fourteen grams or more but less than twenty-eight grams. We affirmed that conviction in the defendant's direct appeal. Commonwealth v. Lobo, 82 Mass. App. Ct. 803 (2012). After the revelations about improprieties at the William A. Hinton State Laboratory Institute (Hinton laboratory) came to light, the defendant filed a motion for new trial.[2] Before us now is the defendant's appeal from the denial of that motion. We affirm.
Background.[3] The substance found on the defendant's person was weighed and its chemical composition analyzed at the Hinton laboratory. State chemist Annie Dookhan served as neither the primary chemist, nor the confirmatory chemist, in that process. See Commonwealth v. Resende, 475 Mass. 1, 7-10 (2016) (describing testing process and various roles that State chemists played). Instead, she served only as the "setup operator" for the gas chromatography-mass spectrometry (GC-MS) machine that produces the graphs that then are analyzed by the confirmatory chemist. Unlike the work of the confirmatory chemist, the role of the setup operator consists of largely ministerial tasks such as tuning the GC-MS machine and loading samples into it. See ids="12457187" index="2" url="https://cite.case.law/mass/475/1/#p7">id. at 9-10.
The person who served as the confirmatory chemist, Daniel Renczkowski, testified at the defendant's trial (as did the primary chemist). Specifically, he testified about how the confirmatory testing process worked in general, about his role in this case, and about his opinion that the substance that he analyzed was cocaine. At one point, the prosecutor asked Renczkowski if he did "in fact work on or test a small vial or sample of [the] substance [provided to the lab in this case.]" The prosecutor also asked him whether "when [he] received that vial ... [he] ran it through the [GC-MS] machine." Renczkowski responded with "yes" to both questions.[4] These answers were not accurate to the extent they suggested that Renczkowski personally loaded the samples into the GC-MS machine and initiated the sampling run; it actually was Dookhan, as setup operator, who performed those functions here. When later pressed during the evidentiary hearing on the motion for new trial about the accuracy of his trial testimony that he "ran [the vial] in this case through the [GC-MS] machine," Renczkowski responded, "Looking back now, probably not entirely accurate." He then offered an explanation for the answers he had given at trial, namely that "[a]t the time, we thought of running something through the [GC-MS machine] as analyzing it and not actually as the person that put the vial on the rack." The specially appointed judicial magistrate who presided over the evidentiary hearing found that Renczkowski's misstatements were "unintentional[ ]." The judicial magistrate also observed that Renczkowski "may in good faith have assumed that he performed the [setup] functions." That observation was supported by evidence that the confirmatory chemist and setup operator were one and the same eighty percent of the time.
The defendant sought a new trial on two grounds. First, he argued that because of Dookhan's role here, he was entitled to the conclusive presumption of egregious government misconduct and that, applying that presumption here, there was sufficient prejudice shown to warrant a new trial. Second, he argued that newly discovered evidence warranted a new trial. He pointed both to the discovery of Dookhan's misdeeds at the Hinton laboratory and the revelation in this case that Renczkowski had misstated who had performed the setup tasks here.
The judicial magistrate concluded that neither Dookhan's role as setup operator, nor Renczkowski's misstatement at trial alone warranted a new trial. However, he also concluded that these two factors "might have the synergistic effect of together warranting a new trial." Because the judicial magistrate further concluded that resolving whether a new trial was warranted involved "weighing the significance of the erroneous testimony of a government witness[,] [which] is a matter reserved for the trial judge," the judicial magistrate referred the matter to the trial judge. After holding a nonevidentiary hearing on the motion for new trial, the judge denied the motion.
Discussion. Issues related to Dookhan's role. The role that Dookhan served in this case as setup operator is identical in all material respects to the one she played in Resende, 475 Mass. 1. It therefore follows that in light of the limited role that Dookhan played in this case as setup operator, the defendant is not entitled to the conclusive presumption of egregious government misconduct recognized by Commonwealth v. Scott, 467 Mass. 336, 352 (2014). See Resende, supra at 14.[5] Unaided by the benefit of that presumption, the defendant is left to argue that Dookhan in fact committed misconduct in this case. See Commonwealth v. Torres, 470 Mass. 1020, 1022 (2015). He has not claimed, much less shown, such misbehavior.[6] Therefore, his argument that Dookhan's involvement in his case warrants a new trial fails.
Renczkowski's misstatement. As noted, the defendant sought a new trial in part based on the fact that Renczkowski provided inaccurate testimony at trial that he was the one who served as the setup operator here, not just the confirmatory chemist. He claims that the discovery that Renczkowski's testimony contained an error constitutes "newly discovered evidence" that is of such significance that, had he known at trial that Renczkowski was not the setup operator, this could have changed the outcome of the trial.[7]
"A defendant seeking a new trial based on 'newly discovered evidence' faces formidable burdens." Commonwealth v. Caruso, 85 Mass. App. Ct. 24, 29 (2014). "To overcome the important societal interests of finality and judicial efficiency, he 'must establish both that the evidence is newly discovered and that it casts real doubt on the justice of the conviction.' " Ibid., quoting from Commonwealth v. Grace, 397 Mass. 303, 305 (1986). For such a motion to be granted, "the judge must find there is a substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial."Grace, supra at 306. The denial of a motion for new trial is reviewed only for "a significant error of law or other abuse of discretion." Commonwealth v. Weichell, 446 Mass. 785, 799 (2006), quoting from Grace, supra at 307. Where, as here, the motion judge was also the trial judge, "special deference" is due. Commonwealth v. Fappiano, 69 Mass. App. Ct. 727, 730 (2007), quoting from Commonwealth v. Buck, 64 Mass. App. Ct. 760, 762 (2005). See Commonwealth v. Santiago, 458 Mass. 405, 414 (2010) ("[The trial judge] is in the best position ... to determine [the new evidence's] probable impact on a jury hearing it with all the other evidence").
For newly appreciated evidence to be "newly discovered," it must "have been unknown to the defendant or his counsel and not reasonably discoverable by them at the time of trial." Grace, supra at 306 (emphasis supplied). The judicial magistrate concluded that the discovery that Renczkowski was not the setup operator constituted "newly discovered evidence," without any analysis of whether this was "reasonably discoverable" by the time of trial. For his part, the judge appears either to have deferred to the judicial magistrate on this issue, or assumed it to be the case. In either event, his memorandum of decision includes no analysis of this threshold question.
In our view, the conclusion that the identity of the setup operator constituted newly discovered evidence is, at a minimum, subject to great doubt. It is uncontested that the Hinton laboratory file identified the setup operator. As the defendant points out, that file was subject to mandatory discovery pursuant to Mass.R.Crim.P. 14(a)(1)(A)(vii), as amended, 444 Mass. 1501 (2005). That means that the Commonwealth had to disclose the existence of that file and make it available for inspection and copying. There is no attorney affidavit or other evidence in the record indicating that the Commonwealth failed to abide by its discovery obligations. Hence, from all that appears in the record, the identity of the setup operator was "reasonably discoverable" and therefore could not constitute newly discovered evidence.[8]
In any event, the defendant also has not made an adequate showing of prejudice. To be sure, the defendant's failure to appreciate that Renczkowski was not the setup operator deprived him of being able to try to impeach Renczkowski about his inaccurate testimony on this point. However, we agree with the judge that such potential impeachment would have had limited force. The Supreme Judicial Court has instructed that "[n]ewly discovered evidence that tends merely to impeach the credibility of a witness will not ordinarily be the basis of a new trial." Commonwealth v. Toney, 385 Mass. 575, 581 (1982). Here, there were particular reasons to doubt the force of such impeachment. Indeed, the judicial magistrate found, and the defendant conceded at the evidentiary hearing, that any errors in Renczkowski's testimony were honest misstatements, not intentional misrepresentations.
Moreover, there was other significant evidence that the substance resembling "crack" cocaine found on the defendant was indeed crack cocaine. In fact, perhaps the strongest such evidence came from the defendant himself: his admission to police that he possessed other drugs hidden "under his balls" (which prompted the police to discover the apparent crack cocaine hidden in that area).[9] The motion judge-who was aided by having presided at the trial-concluded that the lost opportunity to impeach Renczkowski about his misstatements at trial would have added little to the defendant's defense. He specifically concluded that this lost opportunity-even if coupled with arguments based on Dookhan's having served the limited role of setup operator-"would not have been a real factor in the jury's deliberations."[10] "[T]he judge was in a unique position to assess the extent to which the [alleged newly discovered evidence] might have made a difference [and] [h]is assessment of the trial evidence is entitled to 'special deference.' " Caruso, 85 Mass. App. Ct. at 36, quoting from Grace, 397 Mass. at 307.
Conclusion. The defendant has not demonstrated that the judge committed an abuse of discretion or any other error of law in concluding that a new trial was not warranted here. We therefore affirm the order denying the defendant's motion for new trial.
So ordered.
Affirmed.

Strictly speaking, there were two motions for new trial. The parties and the judge treated them as one, and so do we.

"The following facts are drawn from the motion judge's findings of fact, supplemented with details from the record where they are consistent with the judge's findings." Commonwealth v. Lavrinenko, 473 Mass. 42, 43 (2015).

In responding to further questions about the procedures at the lab, Renczkowski referred to what "we" would do.

Unlike the case before us, Resende, supra at 2, involved convictions based on guilty pleas, not a trial. However, the Supreme Judicial Court has indicated that the same considerations apply in both contexts. See Commonwealth v. Francis, 474 Mass. 816, 823-824 (2016). See also Commonwealth v. Nelson, 90 Mass. App. Ct. 594, 595-596 (2016).

For Dookhan's involvement as setup operator to have affected the outcome of the testing, she would have had to have tampered with the vial before putting it into the machine. The judicial magistrate specifically found that "[t]here is nothing to show that Dookhan purposefully tampered with the vial in this case, or for that matter, any case."

To the extent that the defendant suggests that the Commonwealth intentionally withheld exculpatory evidence, such a claim is not supported by the record before us. In fact, during the hearing on the motion for new trial, defense counsel expressly disavowed that she was making an argument based on Brady v. Maryland, 373 U.S. 83 (1963).

We note that a defendant bears the burden of proof that evidence is "newly discovered." Grace, supra at 306 ("The defendant has the burden of proving that reasonable pretrial diligence would not have uncovered the evidence").

According to the defendant, the evidence here was comparable to that of Commonwealth v. Francis, 474 Mass. 816 (2016), a case in which the Supreme Judicial Court ruled that a new trial was required. Numerous factors distinguish Francis from the case before us. For example, the defendant there had not made an admission that what was found in his vehicle was an illicit drug. Id. at 819. Most importantly, based on the role that Dookhan had played there, the defendant was entitled to the presumption of egregious government misconduct. Id. at 823-824.

In listing the many considerations that he examined, the judge mentioned the defendant's "past arrests for drug offenses." The defendant argues that this was an inappropriate consideration given that the defendant's record was not admitted at trial, nor did he testify. Read in context, the judge's mention of the defendant's criminal record appears to refer to practical limitations that the defendant may have faced in considering whether to offer testimony in any retrial. In any event, in agreeing with the judge that a retrial was not warranted, we have not relied on the defendant's record, if any.