The defendant Adriano Almonte pleaded guilty in Superior Court to possession of a class B substance (oxycodone) with intent to distribute, in May, 2012. He thereafter sought relief from his guilty plea because Annie Dookhan was the confirmatory chemist for his case's drug analysis. The defendant argued that had he known of Dookhan's misconduct, there is a reasonable probability he would not have pleaded guilty. Before us now are his consolidated appeals from orders denying a motion for new trial and a reconsideration motion. Because the judge did not err in concluding that the defendant has not shown prejudice from Dookhan's involvement, we affirm.
1. Background. a. Facts. In July, 2010, Lynn police received information that the defendant and an accomplice were selling oxycodone from an address in Lynn, and that the two of them had recently purchased a large quantity of oxycodone and would be transporting it in the defendant's vehicle. The police were also advised that the defendant's vehicle contained a hidden compartment. Police officers stopped and searched the defendant's car, finding the hidden compartment; inside the compartment were a total of 709 pills, separated into several baggies. Two cellular telephones and $262 were also obtained from the defendant.
The 709 pills were sent to the William A. Hinton State Laboratory Institute for testing. A sample of five of the 709 pills was found to contain oxycodone. On the November, 2010, certificate, chemist Daniela Frasca, as primary chemist, and Annie Dookhan, as confirmatory chemist, are listed as analysts for the sample testing. Primary chemist Frasca analyzed the pills, and prepared five sample vials for confirmatory testing. Frasca and Dookhan certified that the pills contained oxycodone, and that the net weight of all of the pills was 191.32 grams.
The defendant was indicted for trafficking in opium or a derivative in the total amount of 100 grams or more, in violation of G. L. c. 94C, § 32E(c).
b. Plea. Pursuant to a plea agreement with the Commonwealth, on May 30, 2012, the defendant pleaded guilty to the lesser charge of possession of a class B substance (oxycodone) with intent to distribute, in violation of G. L. c. 94C, § 32A. At the plea hearing, the defendant admitted to the material facts, including that a search of the defendant's car revealed a hidden compartment containing a large quantity of pills that tested as oxycodone. The defendant received a sentence of four to five years in State prison.[2]
c. Subsequent procedure. In October, 2012, upon learning of Dookhan's misconduct,[3] the defendant filed his first motion for a new trial seeking to withdraw his guilty plea, questioning the accuracy of the drug analysis and arguing that he was deprived of his rights under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. In March, 2013, the defendant filed an amended new trial motion (styled as an amended motion to vacate his guilty plea). On August 15, 2013, a special judicial magistrate issued proposed findings of fact and rulings of law denying the amended motion.
Following the defendant's objection to the magistrate's proposed findings and rulings, a Superior Court judge initially disagreed with the magistrate and allowed the motion for a new trial. However, at a January, 2014, evidentiary hearing, the judge was presented with the remaining pills held in evidence by the Lynn police department, and examined their physical integrity. On January 31, 2014, the judge then reversed his previous decision and affirmed the special magistrate's decision denying the defendant's new trial motion. The judge found that "the physical integrity of a very, very large number of the pills, and easily the majority is completely uncompromised. Thus, [the defendant] would not have altered his decision to plead guilty even if he were aware of Ms. Dookhan's misconduct."[4]
On April 22, 2016, after the decisions in Commonwealth v. Scott, 467 Mass. 336 (2014), and Bridgeman v. District Attorney for the Suffolk Dist., 471 Mass. 465 (2015), the defendant sought to "reopen" his motion for a new trial, arguing based upon those decisions that prosecutorial misconduct was presumed, and that accordingly he had been denied due process. The motion, and a subsequent request for reconsideration, were each denied. The defendant appealed the latter denial on August 10, 2016, and we thereafter stayed the appellate proceedings.
On February 24, 2017, the defendant again filed a motion for a new trial seeking to withdraw his guilty plea. On March 23, 2017, the motion was denied because, inter alia, the defendant's case was not a "typical Dookhan case," as the physical integrity of the oxycodone pills was uncompromised. The defendant appealed from the March 23, 2017, order, and his appeals have been consolidated.
2. Discussion. The defendant claims that the motion judge abused his discretion in denying the defendant's motion for new trial. Our review of the judge's decision is limited to determining whether the judge "committed 'a significant error of law or other abuse of discretion.' " Scott, 467 Mass. at 344, quoting from Commonwealth v. Sherman, 451 Mass. 332, 334 (2008). "The judge's disposition of the new trial motion will not be reversed unless it is manifestly unjust ...." Commonwealth v. Hung Tan Vo, 427 Mass. 464, 467 (1998).
To prevail on a motion for a new trial in a Dookhan-related case, the defendant must satisfy a two-part test: he must show (1) "that egregious government misconduct [that implicates his due process rights] preceded the entry of his guilty plea," Scott, 467 Mass. at 347, and (2) that the conduct was material to the defendant's choice of pleading guilty, meaning that there is "a reasonable probability that he would not have pleaded guilty had he known of Dookhan's misconduct." Id. at 355. Accord Commonwealth v. Francis, 474 Mass. 816, 821 (2016). The full context of the defendant's decision to enter a plea agreement is taken into account. Scott, 467 Mass. at 357.
Regarding the first prong of the test, a defendant "is entitled to a conclusive presumption that egregious government misconduct occurred in the defendant's case" if he or she presents a drug certificate from their case that Dookhan signed either as the primary or confirmatory chemist. Scott, 467 Mass. at 352. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 353 & n.9. In this case, as Dookhan was the confirmatory chemist on the sample submitted for testing, we must presume there was egregious government misconduct.
Here, however, the judge found that the defendant failed to demonstrate a reasonable probability that he would not have entered the guilty plea had he known of Dookhan's misconduct. There were hundreds of pills seized from the defendant's car; the motion judge in 2014 found, based on his own observation, that the physical integrity of the majority of these pills was uncompromised. This finding was cited by the motion judge in one of the orders under review. The defendant has not argued, let alone shown, that this finding is clearly erroneous. As a result, the judge could permissibly conclude that the pills were available to be analyzed by chemists other than Dookhan, and the results presented at any trial. In deciding whether to accept the plea deal, the defendant would have had to take into account that the Commonwealth may have been able to prove the contents of these other pills.[5]
There was additional circumstantial evidence supporting the charges against the defendant. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 357 (judge may consider whether Commonwealth presented other circumstantial evidence to support charge). A police informant identified the defendant as an oxycodone dealer and advised police about the hidden compartment in the defendant's car. The defendant's vehicle contained hundreds of pills in such a hidden compartment, and the police observed the defendant entering and driving the vehicle. Some or all of this circumstantial evidence, which tended to show that the defendant possessed and distributed oxycodone, also would have been available at any trial. See Commonwealth v. Antone, 90 Mass. App. Ct. 810, 818 (2017).
In addition to facing a substantial risk of a guilty verdict if he went to trial, the defendant received a considerably reduced sentence as a result of the plea agreement. See Scott, 467 Mass. at 357 (motion judge may consider sentence reduction resulting from plea); Commonwealth v. Resende, 475 Mass. 1, 18-19 (2016). At the time of the plea, the defendant's original charge of trafficking in over 100 grams of opium or a derivative carried a ten-year mandatory minimum sentence. G. L. c. 94C, § 32E(c ), as amended through St. 1992, c. 396, § 3. By agreement the defendant pleaded guilty to the lesser offense of possession of a class B substance with intent to distribute, thereby eliminating, potentially, five additional years in prison.
Finally, apart from Dookhan's misconduct there is no evidence that the defendant had a substantial ground of defense to pursue at trial.
In short, the Superior Court judge did not abuse his discretion or otherwise err in determining that the defendant failed to satisfy his burden of demonstrating a reasonable probability that he would not have pleaded guilty had he known of Dookhan's misconduct.[6]
Order entered August 1, 2016, denying motion for reconsideration affirmed.
Order entered March 23, 2017, denying motion for new trial affirmed.

The defendant was deported based on his conviction.

See Commonwealth v. Scott, 467 Mass. 336, 337-342 (2014).

The defendant filed a notice of appeal from the judge's January 31, 2014, order but apparently failed to perfect the appeal. Even if that appeal were before us, we would reach the same result as we do in our discussion below.

Although not raised by the defendant, we have considered the statement in Scott, 467 Mass. at 357, that "a judge may not consider any assertion by the Commonwealth that it would have offered to retest the substances at issue in the defendant's case if the defendant had known of Dookhan's misconduct." The statement is not applicable to the facts here, as here the judge's decision denying the motion for new trial was not based upon any offer of the Commonwealth to retest or upon any hypothetical results; rather, the denial was based upon a judge's examination of the physical evidence, and the recognition that many of the pills were physically uncompromised.
The Scott court's concern about "hypothetical arguments," ibid., accordingly is not present in this case; here at the time of his plea the defendant knew that there were many pills seized, and that given their physical characteristics they may have remained uncompromised. These were the "actual facts and circumstances" that the defendant would have had to consider in deciding whether to plead guilty, even if he had known of Dookhan's misconduct. Ibid.

We therefore additionally conclude that the motion judge did not err in denying the defendant's motion for a new trial without an additional evidentiary hearing.